## Case No. 9,743.

### MOODIE v. The BROTHERS.

### [Bee, 76.][1]

District Court, D. South Carolina. March, 1795.

NEUTRALITY LAWS—EQUIPMENT OF WAR VESSEL—REPAIRING.

Equipment for war in a neutral port does not take place merely by alteration of two ports in repairing the waist of a vessel previously armed.

In admiralty.

BEE, District Judge. The cause now before the court is briefly this. The schooner Port-de-Paix, duly commissioned by General Laveaux, and owned altogether by Frenchmen, captured on the 27th of January last (1795) on the high seas, without the jurisdictional limits of the United States, the ship Brothers, belonging to a subject of his Britannic majesty. The prize, upon her arrival in this port, was, with her cargo, libelled by the British consul, Mr. [Benjamin] Moodie; who, among other causes, alleges that the privateer was originally fitted out in the port of Charleston, or augmented in her warlike

---

[2] [Since reported in 3 Dall. (3 U. S.) 133.]
[1] [Reported by Hon. Thomas Bee, District Judge.]

force, contrary to the act of congress and law of neutrality and nations. He, therefore, claims restitution of the captured vessel. The claimants on oath deny that the privateer was originally fitted, armed, or manned within any of the ports of the United States; or that she received therein any augmentation or addition, solely applicable to purposes of war. They produce a copy of their commission from General Laveaux, and plead the 17th article of the treaty with France in bar to the interference of this court in this cause. Several exhibits have been filed to shew that the captured vessel and cargo are British property; and one exhibit proves that the privateer was formerly an armed vessel in the service of the king of Spain, and then mounted eighteen guns. That she was captured by the Montagne French privateer and brought into this port, from whence she afterwards departed with fewer guns than she had on her coming in. After which she was commissioned and manned at Port-de-Paix. It was agreed between the parties, the pleadings being completed, that the evidence taken by me in this court in November last, in the case of The Courier [Case No. 3,-283] captured by the same privateer and libelled here, should be received as evidence in this cause also. I have already, by my decree in the case of The Courier, declared my opinion of this privateer; but have reconsidered the evidence with great care. Messrs. Wallace, Libby, Williams, Carpenter, Weyman, and the collector, all agree that she was a complete privateer when she first arrived here. She had then fourteen guns on her main deck, two cohorns forward, and swivels on her quarter deck. They also agree that she received no augmentation of force here. She had been much injured in her engagement with La Montagne, and was compelled to take off her quarter deck. She then went to sea, returned dismasted, and took a new mast. But none of the witnesses saw any additional equipments. Ingram, who worked on her says, she had her quarter deck taken down, her waist repaired, and two ports cut therein. That she was an armed vessel when she arrived, and was repaired as a privateer. The question then is wholly as to the cutting of two new ports, when her waist was repaired. This arises out of Ingram's testimony, which is at variance with that of Williams, Libby, and Carpenter, and positively contradicted by the oath of the claimants, who swear that the repairs she received in this port were necessary to her safety and sailing, but not at all applicable to war. They say that she actually went to sea with fewer guns than she had when she arrived as prize. Admitting then, for the sake of reconciling Ingram's testimony with that of all the other witnesses, and with this oath of the claimants, that two of her ports in the waist were altered, this will not amount to any additional equipments; nor can it be considered as a breach of neutrality. If a prosecution had been instituted under the act of the 5th of June, 1794 [1 Stat. 383], no forfeiture could have been adjudged for so trifling an alteration. Upon the whole, I retain my former opinion, and that upon mature deliberation. I therefore admit the relevancy of the plea in bar, and decree that the libel be dismissed with costs.